Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is number 171371, United States v. John George, Jr. Thank you. Thanks. Yeah. Good morning, Rose. Good morning. My name is William Sintolo, C-I-N-T-O-L, and I'm arguing on behalf of John George, Jr. This is a case that was remanded back to the district court for reconsideration to determine whether the district court wanted to reconsider its previous forfeited judgment. After additional memorandum was filed, the court, without further hearing, simply ordered the fourth audit as she had ordered in the previous proceedings. This is a case in which Mr. George, who operated a bus company in southeast Massachusetts, pursued to a contract with an authority, a regional authority. The question became whether or not the management fees that he received, meaning the contract allowed him to get management fees, whether or not those management fees were constituted or derived from the criminal activity. In this particular case, the defendant argued that the government had to prove that there was a direct connection between the generation of the fees, whether or not the proceeds of the fees were, in fact, generated by the criminal activity. Contrary, the government argued that they could be forfeitable if they were indirectly received. The argument of the government was that if they were indirectly received as a result of the fraudulent activity, then all of the proceeds could be forfeit. The government's argument was, in essence, a but-for argument, and their argument was that but-for certain acts or activity, Mr. George would not have received the fees from the contracts. Are you going to speak to the Cox case, which seems to support the government's position with the rule that the amount of forfeiture may be based on the entire series of acts in the conspiracy? In this case, they could presumably, under Cox, be based on the improprieties involved in obtaining the contract in the first place, quite apart from misusing employees after the contract was obtained. Now, what is the answer to that argument? The most recent articulation of that is Gorski, which was returned, I think, about three weeks ago from this court, and Gorski stands for that proposition. In Gorski, Gorski was an individual who misrepresented that his construction company was operated by a disabled veteran, when, in fact, Mr. Gorski was not a disabled veteran. And in that particular case, the government argued that indirect fees, the fees that he received as a result of these contracts, resulted from the fraud and therefore could be forfeited. In the Gorski case, the Gorski case is, I say, exactly the opposite of this case, and shows the difference between the two matters. In Gorski, the court indicated that each time Mr. Gorski mailed something, each time he misrepresented that, in fact, the company was a veteran-owned or a disabled veteran-operated company, each time he made those filings, he received proceeds as a result of that misrepresentation. I'm sorry, you're not answering Justice Souter's question. We're trying to figure out why the activity that gave rise to the contract in the first place, the fraudulent activity that gave rise, is not a sufficient nexus for the management fees. Fraudulent activity alleged in this case was that Mr. George allowed or used certain people who were being paid by the authority, he allowed them to work, in essence, at his farm while still being paid by the authority. No, no, that wasn't the charge in this case, that was an overt act in support of the conspiracy. The charge in this case was a conspiracy and scheme to defraud under section 666. One of the overt acts in support of that was his alleged embezzlement of the services of employees. But that doesn't make the charge an embezzlement charge, it's a conspiracy charge. Well, I would contend that the conspiracy was to violate 666, correct, Your Honor, and I think you indicated that in the original three. However, with regard to whether or not the fees derived from the payments received from the contract, whether or not that was part of the conspiracy, whether or not that was the conspiracy that was tried. And the argument that the answer is yes rests upon, as I understand it, the evidence at trial that, in fact, misrepresentation was used in order to obtain the contract in the first place. Isn't that so? No. There are two contracts. There's 2005, the original contract from 2005 to 2010. Well, didn't in 2005 he pass questions along to Cosentino? And didn't he bring in a higher bidder at that point? No. There was no, the questions he asked, there was nothing improper with the questions, there was nothing wrong with the questions. He asked them that he ask certain questions of the other bidder, whether or not he was going to provide certain services. That's not even the theory upon which the government proceeded on the forfeiture. They're not contending that that was fraudulent. They never contended it was fraudulent. They said, but for, okay, but for him not telling the authority that he was performing these acts. Had he informed them, they probably would not have given the contract to him. But for the activity, he would not have gotten these funds. That's not so. Which makes those acts an act in formation and furtherance of the conspiracy, does it not? Well, I think the best indicator of an individual would be evidence, would be the best indicator of whether or not that particular activity was the conspiracy that was charged. At the hearing on the forfeiture, the district court judge, after the government had argued that we got to the but-for position, claiming the conspiracy, she said, I don't believe that's the conspiracy that was charged in the indictment, and that's not the evidence that was presented at trial. Now, she specifically says that. She heard the evidence. She indicates that that's not the evidence, that's not the conspiracy he was charged with. He wasn't charged with any kind of act of defrauding the authority by obtaining the contract. He was charged with a conspiracy to take the funds. The embezzlement allegedly was the funds that were paid to Sandoz Santos and Roy Rocha. That was the conspiracy. That was the allegation. Those acts were the overt acts, as Judge Selye said a moment ago. But to charge overt acts in a conspiracy indictment does not limit the conspiracy to the overt acts charged. I understand that. Moreover, to me, the most puzzling thing about your argument is that when I read the particular forfeiture statute with which we're involved in this case, it specifically says that when the forfeiture results from unlawful activity, as opposed to lawful activity performed in an unlawful manner, the proceeds are any monies derived directly or indirectly by the defendant. And that's such a broad definition that I think that your argument doesn't really address the indirect prong of it. In your brief, you cite Honeycutt, which is under a completely different statute and does not deal with a statutory definition which permits forfeiture on the basis of indirect derivation of proceeds. I also, I believe I cited Menifee and several other cases that specifically talk about that exact point. And if you listen to the reasoning or read the reasoning in Menifee in that line of cases, they talk about whether or not it should be under 2B or 2A. 2A is the statute that indicates that it should be done in a certain way that should be direct, that should be done in a direct, that should be a direct connection. The other statute, B, I believe, indicates that it can be direct and indirect. And the way they arrive, the way the government arrived at one section as compared to the other, was to determine that the language in the statute was the same as the language in 1951, which indicated unlawful activity was the same as specified unlawful activity. Thank you. Counsel, I'm sorry. Your time is up. Thank you, Your Honor. Your Honor, may it please the Court, Randall Crum on behalf of the government. Your Honor, the government's position is that the forfeiture order should be affirmed on the basis of the facts set forth in the record and could reasonably be found by the district court because, as the court has addressed in the questioning, the conspiracy that was proved here and the conspiracy that was recognized by the district court to exist here included collusion in the procurement of the contract pursuant to which the management fees were given. And that was... It's not only collusion in the procurement. There's also evidence of collusion in the oversight. Collusion in the oversight. Right. And that adds a component of it. In trying to argue otherwise, defense counsel essentially argues that the government made a very narrowly targeted case here that focused only on the misappropriation of certain individuals' time. And yet the conspiracy was far broader than that, and that's reflected in the evidence which showed political interference in the bid process as well as an ongoing attempt to prevent oversight of what was going on so that the contracts would continue to be renewed every five years despite the fact that there was this ongoing misappropriation happening. Because all of those were components of the conspiratorial scheme, the government argued, and very clearly in its reply brief in 2015, in response to the initial opposition to forfeiture, and then again in 2017, that all proceeds from the contract were forfeitable, although it did not seek to forfeit all of them, but that any benefit he obtained because the contract itself had been unlawfully obtained. And the district court's questioning doesn't suggest that it did not understand that. In fact, it asked probing questions of both sides, but one of the questions it asked of the defense counsel was, isn't the government right that the conspiracy was broader than you suggest and didn't include activities in the procurement of the contract? Wasn't there involvement there? It was shown in the trial evidence. So I don't think there's any way to say the district court didn't understand this and wasn't relying on this evidence when it found that the entire amount of management fees was forfeitable. To address one question raised by Judge Selya with respect to direct and indirect costs, the government argues in its brief that it doesn't matter in this case which prong of the forfeiture statute one proceeds under because this is in fact a direct outgrowth of the conspiracy that was charged and proved. One of the arguments he makes is that it makes a large difference in this case, whether we're proceeding under A or B, because one of them includes direct and indirect costs and the other does not. While the government does not believe there was an error in how this was described to the district court in terms of which definition of proceeds apply, it doesn't matter because in this case these were the direct result of the very activities that were charged, proved to trial, and found by the district court in upholding various enhancements to the sentence at sentencing based on additional information in the PSR. If the court has any other questions with respect to the second issue, I'd be happy to address them. Otherwise, I'll rely on the brief. There's another issue raised in the briefs about the alleged failure to permit allocution. I was surprised to see you suggest in your brief that the answer to that argument is plain error. Yes, Your Honor. Well, haven't we held quite clearly that a denial of the right to allocute is structural error, not subject to plain error analysis? Well, I understood his argument to be the argument about whether he was not allocution, but it was his right to be present. And I understand that that is subject to plain error review, Your Honor. Well, that's true. The right to be present may be subject to plain error review. I understood his argument as an argument about the right to allocate. Okay. I mean, I do think that he focuses on his right to be present. He said at several points he does not have the constitutional right to be present, so I understood the argument in that way in response to it in that light. I would say that I believe the additional arguments that we make here do apply, which is that it's still subject to the requirement that he show prejudice. In fact, we think that there's initially a question whether there was an error because given the nature of the remand order and given how it was understood by the district court, there was no need for a hearing or constitutional need for a hearing at which the right to be present and to allocate would arise. I think that's quite a strong rejoinder. It's unfortunate that that wasn't made very clearly in your brief. Well, we did argue in the brief that we believe that under the circumstances of the case that the particular error that was identified by this court was a failure of jurisdiction to enter the resulting order, and that based on that we argue that there's not a clear and obvious error in proceeding to remedy that error. You didn't very clearly make the argument that there was no error at all. That's the argument you're making now, and I think that argument has some merit. I'm wondering what the effect is that it wasn't made very clearly in your brief. I regret that I didn't make it as clearly. I was focused on the fact that because it's plain error review, the question is easier for the court in some sense. We don't have to decide whether in some circumstances this might constitute an error with respect to a forfeiture hearing, and that is being cognizant of this court's suggestions in Cappadocia that there was in fact maybe a right if there was a full-fledged forfeiture hearing, but that this was a narrower type of proceeding in which the right would not arise, and therefore there couldn't be a clear and obvious error. And as we do further argue in our brief, there's no suggestion of any meaningful prejudice resulting because the only issue that he meaningfully raises in terms of that he would like to have spoken to at such a hearing has to do with relitigating the abusive position of trust enhancement, which is something that's not open to him. So whether one views it as a lack of an error, lack of clear or obvious error, or inability to show prejudice, in any event, the claim fails on plain error review. Thank you. Thank you, Your Honor.